UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JTKB, LLC and<br>JEFFREY TYRRELL, | Case No.: 19-cv-919 (MJD/ECW) |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| FRANCHOICE, INC. and<br>SCOTT JONES, | |
| Defendants. | |

## AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a), Plaintiffs JTKB, LLC and Jeffrey Tyrrell (collectively "Plaintiffs" or "Tyrrell"), by their attorneys for their Amended Complaint against defendants FranChoice, Inc. ("FCI") and Scott Jones, allege as follows:

## SUMMARY OF DISPUTE

1. This is an action brought by Plaintiffs, JTKB, LLC, and its principal, Jeffrey Tyrrell, against FCI, a franchise broker, and its agent, Scott Jones, arising out of Mr. Jones's and representations to induce Tyrrell to acquire an ILoveKickBoxing ("ILKB") franchise that defendants knew or should have known were false and unlawful. After deciding to own and operate his own business, Tyrrell began exploring the possibility of franchise ownership. Recognizing that he needed expert professional guidance in selecting an appropriate franchise opportunity, he turned to FCI, and in turn its representative Scott Jones, who held themselves out as franchise experts and who would guide Tyrrell to the "pre-screened A+ companies;" and that they would make sure he got all the information that he needed about the franchise, including information on litigation

1

and other "adverse information. Having gained his confidence in FCI and Jones's superior knowledge about franchises, Jones introduced Tyrrell to ILKB and told him, among other things that the franchise was suitable for absentee ownership; that ILKB would handle all of the marketing needs; and that the cost to open a studio was under $200,000. After opening, Tyrell discovered that none of the representations about ILKB were true: ILKB was an unproven concept with an unsustainable business model, resulting in Tyrell's failure. This disastrous result would not be surprising in light other information that Tyrell learned: ILKB's founder had obtained a discharge from bankruptcy only two years before FranChoice and Jones promoted the franchise to Tyrell, and ILKB, its founder and affiliates had been or were defendants in several cases charging fraud and violation of franchise laws. This was exactly the kind of information that Tyrell relied upon FranChoice and Jones to find and warn him about, and exactly the kind of information that would have deflected Tyrell from purchasing an ILKB franchise. By this action Tyrrell seeks to hold FCI and Mr. Jones responsible for their fraudulent conduct and obtain some measure of redress.

## Jurisdiction and Venue

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332(a) in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. Venue is proper in this District because the defendant is located in this district.

**Parties**

4. JTKB, LLC is a limited lability company formed under the laws of Connecticut with a principal place of business in Orange, Connecticut, where it owns and operates an ILKB franchise.

5. Jeffrey Tyrrell is an individual citizen of Connecticut, and resides in Darien, Connecticut. Mr. Tyrrell formed JTKB, LLC as the vehicle for acquiring an ILKB franchise, and owns and operates that company.

6. FranChoice, Inc. ("FCI") is a corporation formed under the laws of Minnesota, with its principal place of business in Eden Prairie, Minnesota. It is a franchise broker that assists prospective franchisees in identifying, investigating, selecting and acquiring franchises.

7. Scott Jones is an individual residing in Colorado and is a citizen of that state. He was an FCI representative and was instrumental in the sale of the ILKB franchise to Tyrrell. He is subject to jurisdiction in Minnesota as an agent of FranChoice, and by reason of his systematic and continuous contacts with Minnesota, both in connection with the sale to Plaintiffs of the ILKB franchise and by reason of his relationship with FranChoice.

8. Non-Party ILKB, LLC is the franchisor of "iLoveKickboxing.com" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness. At all relevant times, ILKB was a New York limited liability company with its headquarters in New York State. At all relevant times, ILKB was subject to the New York State Franchise Sales Act, N.Y. Gen. Bus. L. § 680 *et seq.* ILKB offered and sold franchises only in and from New York State.

## **JURY TRIAL**

9. Plaintiffs demand a jury trial on all triable issues raised in this complaint.

## **FACTS**

10. Tyrrell became interested in purchasing a franchise in the spring of 2015; he engaged FCI and, in turn, the FCI consultant and representative Scott Jones, to assist him in finding appropriate opportunities.

11. Through its website (https://www.franchoice.com/), FCI held itself out as directing prospective franchisees to "high quality franchise businesses that match your requirements" and that it would match "entrepreneurs like you with the perfect franchise business." FCI stressed that Plaintiffs could "avoid the confusion of researching" franchise opportunities and could focus on those franchises that FCI had "selected …as franchise businesses matching [his] requirements." FCI further stated that "[t]hey will be by your side coaching you and making sure you are getting the information you need in order to make the best decision for you."

12. In a June 17, 2015 email, Mr. Jones emailed Tyrell stating that he was "uniquely qualified" to help Tyrell "find your ideal franchise;" that he had "been involved with franchising at every level," had owned franchises, been a senior executive of one of the world's largest franchises, and had led a company that developed over fifty franchise programs for Fortune 500 companies. Also on that date, Jones represented that "we have PRE-SCREENED literally hundreds of franchise companies to find the ones that are A+ Opportunities. We take the model and use it to sort through these to see if any of the A+ companies might match up well for you." At or around that time, Mr. Jones also provided a document entitled "Franchise Company Investigation Procedure" that stated that the Franchise Disclosure Document disclosed the history of the franchise and its

officers and directors, all costs and fees that the franchisee would be subject to, any relevant litigation history of the company or its officers, "any business failures, ownership transfers, franchise agreement terminations or other potentially adverse information relating to the success rate of the existing units in the system."

13. In June 2015, FCI and Mr. Jones introduced Tyrrell to ILKB. Tyrrell was interested in establishing a location in Connecticut or New York, and Tyrrell was informed by ILKB that the territory was available.

## Defendants' Misrepresentations

14. To induce Tyrell to purchase an ILKB franchise, Jones made the representations set forth in subparagraphs (a) through (f) in a telephone call on June 23, 2015:

   a. Mr. Jones confirmed to Plaintiffs that the business was a semi to fully absentee owner business, meaning that Plaintiffs would need to devote only a few hours a week to supervising a manager, who would run the business.

   b. Mr. Jones represented that ILKB had "never lost a franchise."

   c. Mr. Jones also represented that the high end for investment in an ILKB franchise was $190,000.

   d. Mr. Jones represented that ILKB was extremely successful at marketing the franchise and driving leads to the franchise.

   e. Mr. Jones also represented that ILKB would handle 100% of the marketing activities and that "Mr. Parrella was the brightest individual he had met in a very long time."

   f. Mr. Jones said that a result of their marketing abilities, ILKB was able to drive significant customers to the franchisees with a 50% membership conversion.

   g. Throughout all of these representations, neither FCI nor Mr. Jones ever mentioned any membership attrition issues or issues with bad debts in the form of delinquents, declines and cancellations (collectively "attrition").

5

**Plaintiffs' Justifiable Reliance**

15.     Tyrell believed FCI's and Jones's representations that they were franchise "experts," that they would match him with the "ideal" franchise; that they would be "by your side coaching you and making sure you are getting the information you need in order to make the best decision for you;" that they would ensure he got information on the litigation history and "other adverse information" before deciding to purchase a franchise; and that Jones worked with "pre-screened A+ opportunities," believed that they had superior knowledge, relied upon that superior knowledge, and put his trust and confidence in them. Having done so, he believed their representations about ILKB as statements of facts and as the words of reliable franchise experts who had undertaken to take care of him. On the basis of FCI and Jones's representations, Plaintiffs invested $110,000 in franchise fees; $235,000 in outfitting the Orange, Connecticut location and undertook substantial lease and loan obligations.  Plaintiffs' first location opened on February 25, 2016.

**The Falsity of Defendant's Representations**

16.     After opening the business, Plaintiffs learned that the representations that FCI and Mr. Jones and others had made to Tyrrell were not true:

  a.    It was not possible to operate the franchise as an absentee owner; in fact, it required the full-time attention of the owner.  FCI and Jones knew or should have known, as "franchise experts," that very few franchises succeed without full-time (or more) involvement of the owner and that franchise systems that have "absentee owners" usually are mature systems with widely recognized brand names and well-established procedures, not start-ups, without name recognition, seasoned management and a track record spanning at least one franchise term.

  b.    The statement ILKB had not lost any franchises was false.  During 2015 alone, ILKB was closing or repossessing 10 locations and, upon information and belief based upon statements of closed

        franchisees, it had closed outlets in 2014. FCI and Perry had no reasonable basis for representing that there had been no closures, as they had no access to such information.

    c.    Mr. Jones's assurance that start-up costs would not exceed $190,000 was false; in fact, Tyrell's cost to open exceeded $345,000. FCI and Jones should have known their estimates were baseless, as they had no access to individual franchisee records, and, upon information and belief, never questioned any statements that ILKB made about them.

    d.    Jones's statements that ILKB was extremely effective at marketing and that ILKB handled 100 percent of the marketing lacked a basis in fact and failed to reflect any inquiry into the scope, cost or expense required of franchisees to market ILKB; in other words, FCI and Jones, having undertaken to tell Tyrell that ILKB's marketing was "extremely effective," and that ILKB handled 100 percent of it, failed to disclose that that effectiveness came at very high price to the franchisee in terms of advertising costs and free memberships to prospective customers.

    e.    The rate of conversions of trial memberships to regular memberships was far below the 50 percent defendants represented. Defendants had no basis to make this representation, and should have known it was false because they had no access to individual franchisee records.

    f.    Most significantly, FCI never disclosed that attrition made it impossible to attain or maintain the levels of membership needed to "break even." Plaintiffs were unable to maintain income from existing members because of member attrition and failures to pay, and the franchisor's undisclosed policy of not enforcing, or permitting enforcement of, member contracts and payment obligations.

    17.    Contrary to FCI's representations that it would direct Tyrrell to a "high quality franchise businesses," and that FCI would "make sure you are getting the information you need," and contrary to Mr. Jones's written representations that FCI had "pre-screened...A+ opportunities" and the FDD would provide information on "any relevant litigation history of the company and its officers or any "other potentially adverse information," FCI and Mr. Jones either failed to do any due diligence on ILKB or did do due diligence and failed to disclose their findings to Tyrrell. As an example, a 30-minute

7

search on pacer.gov, which contains records of lawsuits in federal courts, would have disclosed that Michael Parrella, the founder of ILKB, had been discharged from bankruptcy in 2008; that he had been sued twice for fraud in the course of that bankruptcy; and that FC Online Marketing, an affiliate of ILKB, had also been charged with fraud or violation of franchise laws in various lawsuits. Had FranChoice or Mr. Jones disclosed any one of these lawsuits or Parrella's bankruptcy, Tyrrell would never have purchased an ILKB franchise.

18. As a result of Tyrell's reasonable reliance upon FCI and Jones's misrepresentations and fraudulent omissions, Tyrell has incurred damages in an amount to be proven at trial but in excess of $300,000.

## COUNT I
### (Violation of the Connecticut Business Opportunity Investment Act (the "Connecticut Act"))

19. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

20. Under the Connecticut Act, Conn. Gen. Stat. § 36b-67 *et seq.*, it is unlawful for any person in connection with the sale or offer for sale of a business opportunity to "directly or indirectly (A) employ any device, scheme or artifice to defraud, (B) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (C) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."

21. Defendants violated the Connecticut Act by making false representations to Tyrrell for the purpose of inducing him to purchase an ILKB franchise, as set forth above.

22. Tyrrell reasonably relied on the misrepresentations set forth above, and as a result Plaintiffs have suffered damages of no less than $650,000.

## COUNT II
### (Fraud)

23. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

24. Defendants committed fraud by knowingly making false representations and omissions, as set forth above, to Tyrrell for the purpose of inducing them to purchase an ILKB franchise.

25. Tyrell reasonably relied upon these representations and omissions in deciding to purchase an ILKB franchise. These representations proved to be untrue, and Tyrrell has suffered damages of no less than $650,000.

## COUNT III
### (Negligent Misrepresentation)

26. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

27. Defendants negligently made false representations in the course of the sale of the franchise and that it knew to be contrary to the truth and knowing that Tyrrell would rely upon them.

28. As a result of Tyrrell's reliance upon Defendant's negligent misrepresentations, Plaintiffs have incurred damages to which they are entitled to recover.

WHEREFORE, Plaintiffs seek judgment as follows:

    A. An award of actual damages in an amount to be determined at trial, but in no event less than $300,000;

B. An award of attorneys' fees to the extent permitted by law;

C. An award of costs and disbursements; and

D. Such other and further relief as the Court deems just and proper.

Dated: May 8, 2019                               GARNER & GINSBURG, P.A.


/s/ W. Michael Garner
W. Michael Garner
Erin C. Johnsen
43 Main Street SE, Suite 500
Minneapolis, Minnesota  55414
Tel.: (612) 259-4800
Fax: (612) 259-4810
Email: wmgarner@yourfranchiselawyer.com
Email: ecjohnsen@yourfranchiselawyer.com

***Attorneys for Plaintiffs***