UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JTKB, LLC and<br>JEFFREY TYRRELL<br><br>    Plaintiffs,<br><br>    v.<br><br>FRANCHOICE, INC., and<br>SCOTT JONES,<br><br>    Defendants. | Case No. 19-cv-919 (MJD/ECW)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6). (Dkt. 13.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed the present action on April 3, 2019. (Dkt. 1.) Plaintiffs subsequently filed an Amended Complaint on May 8, 2019. (Dkt. 10.)

The operative Amended Complaint alleges as follows: Plaintiff Jeffrey Tyrrell ("Tyrrell"), who resides in and is a citizen of Connecticut, owns Plaintiff JTKB, LLC, a limited lability company formed under the laws of Connecticut with a principal place of business in Orange, Connecticut. (Dkt. 10 ¶¶ 4-5.) Tyrrell became interested in purchasing a franchise in the spring of 2015. (*Id.* ¶ 10.) Tyrrell engaged Defendants Franchoice, Inc. ("FCI") and, in turn, the FCI consultant and representative Scott Jones

("Jones"), to assist him in finding appropriate franchise opportunities. (*Id.*) FCI is a corporation formed under the laws of Minnesota, with its principal place of business in Eden Prairie, Minnesota. (*Id.* ¶ 6.) It is a franchise broker that assists prospective franchisees in identifying, investigating, selecting, and acquiring franchises. (*Id.*) Jones, an FCI representative, is an individual residing in Colorado and is a citizen of Colorado. (*Id.* ¶ 7.)

Through its website (https://www.franchoice.com/), FCI held itself out as directing prospective franchisees to "high quality franchise businesses that match your requirements" and represented that it would match "entrepreneurs like you with the perfect franchise business." (*Id.* ¶ 11.) FCI stressed that Plaintiffs could "avoid the confusion of researching" franchise opportunities and could focus on those franchises that FCI had "selected . . . as franchise businesses matching [his] requirements." (*Id.*) FCI further represented that "[t]hey will be by your side coaching you and making sure you are getting the information you need in order to make the best decision for you." (*Id.*)

In a June 17, 2015 email, Jones emailed Tyrrell stating that he was "uniquely qualified" to help Tyrrell "find your ideal franchise," had "been involved with franchising at every level," had owned franchises, had been a senior executive of one of the world's largest franchises, and had led a company that developed over fifty franchise programs for Fortune 500 companies. (*Id.* ¶ 12.) Jones also represented to Tyrrell that "we have PRE-SCREENED literally hundreds of franchise companies to find the ones that are A+ Opportunities. We take the model and use it to sort through these to see if

2

any of the A+ companies might match up well for you." (*Id.*) In addition, Jones provided Tyrrell a document entitled "Franchise Company Investigation Procedure" that stated that the Franchise Disclosure Document disclosed the history of the franchise and its officers and directors, all costs and fees that the franchisee would be subject to, any relevant litigation history of the company or its officers, and "any business failures, ownership transfers, franchise agreement terminations or other potentially adverse information relating to the success rate of the existing units in the system." (*Id.*)

In June 2015, FCI and Jones introduced Tyrrell to non-party ILKB, LLC ("ILKB"). (*Id.* ¶ 13.) ILKB is the franchisor of "iLoveKickboxing.com" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness. (*Id.* ¶ 8.) At all relevant times, ILKB was a New York limited liability company with its headquarters in New York State. (*Id.*) ILKB offered and sold franchises only in and from New York State. (*Id.*) Tyrrell was interested in establishing a location in Connecticut or New York, and Tyrrell was informed by ILKB that the territory was available. (*Id.* ¶ 13.)

Prior to the purchase of a ILKB franchise, FCI and Jones made the following representations or omissions of fact concerning the performance of the franchise: Jones confirmed to Tyrrell that the business was a semi to fully absentee owner business, meaning that Jones would need to devote only a few hours a week to supervising a manager; Tyrrell represented that ILKB had never lost a franchise; that the high-end for investment in an ILKB franchise was $190,000; that ILKB was extremely successful at marketing the franchise and driving leads to the franchise; that ILKB would handle 100%

3

of the marketing activities and that "Mr. Parrella [the founder of ILKB] was the brightest individual he had met in a very long time"; and that as a result of their marketing abilities, ILKB was able to drive significant customers to the franchisees with a 50% membership conversion. (*Id.* ¶¶ 14, 17.) Neither FCI nor Jones ever mentioned any membership attrition issues or issues with bad debts in the form of delinquents, declines or cancellations. (*Id.*)

In reliance upon the representations of FCI, including by Jones, that they were experts in the franchise industry and would provide all the necessary information needed to make a decision in purchasing a franchise, Tyrrell invested $110,000 in franchise fees and $235,000 in outfitting the Orange, Connecticut location, as well as undertook loan and lease obligations. (*Id.* ¶ 15.)

After opening the business, Plaintiffs learned that the representations that FCI and Jones had made to Tyrrell relating to ILKB franchises were untrue, including their discovery that: it was not possible to operate the franchise as an absentee owner; the statement that ILKB had not lost any franchises was false; costs exceeded the $190,000 amount represented by Defendants; ILKB's marketing was not effective; the rate of conversions of trial memberships to regular memberships was far below the 50 percent Defendants had represented; and FCI never disclosed that attrition made it impossible to attain or maintain the levels of membership needed to "break even." (*Id.* ¶ 16.)

Defendants also failed to do or disclose their due diligence by not discovering or communicating to Plaintiffs the existence of lawsuits and a bankruptcy related to ILKB's founder Parella and its affiliates. (*Id.* ¶ 17.) Plaintiffs assert that had they known of this

4

information they would not have purchased any franchises from ILKB.  (*Id.*)

Plaintiffs assert claims for relief against Defendants for their alleged violations of the Connecticut Business Opportunity Investment Act, Conn. Gen. Stat. § 36b-67 *et seq.* Plaintiffs also assert claims against Defendants for common law fraud and negligent misrepresentation.

Defendants move to dismiss Plaintiffs' Connecticut Business Opportunity Investment Act ("CBOIA") claim.

## II.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations

5

omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:
>
> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

6

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

### III.   ANALYSIS

Defendants argue that because the CBOIA only governs the conduct of persons who sell or offer to sell business opportunities, and not companies like FCI who do not offer or sell business opportunities, the CBOIA has no application to this case. (Dkt. 15 at 6-7.) Specifically, Defendants argue that the CBOIA does not apply to them because the plain language of the Act is clear that it only applies to the sellers of business opportunities and the Amended Complaint asserts that ILKB was the franchisor, not Defendants, and that ILKB sold the business opportunity in the form of franchises and territories to Plaintiffs. (*Id.*) Plaintiffs counter that the broad definition of "offer" under the CBOIA applies not only to sellers of business opportunities, but also to companies

7

like FCI that solicit offers for the purchase of business opportunities. (Dkt. 22 at 6-7.) Plaintiffs also rely upon the definition of "seller" under the Act, which they contend includes any agent or person directly or indirectly involved with a franchise sale, such as Defendants. (*Id.* at 7.)

The CBOIA "was enacted with the purpose of preventing the misrepresentations and fraudulent practices involved in business opportunity investment sales and the financial losses and hardships to investors which result therefrom." *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 455, 27 A.3d 1, 10 (2011); *see also Eye Assocs., P.C. v. IncomRx Sys. Ltd. P'ship*, 912 F.2d 23, 25 (2d Cir. 1990). The CBOIA prohibits the following activities:

> No **person shall in connection with the sale or offer for sale of a business opportunity**: . . . . (6) directly or indirectly (A) employ any device, scheme or artifice to defraud, (B) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (C) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Conn. Gen. Stat. § 36b-67 (emphasis added). Under the CBOIA, "person" is defined as "an individual, corporation, limited liability company, trust, partnership, incorporated or unincorporated association or any other legal entity." Conn. Gen. Stat. § 36b-61(5). In turn, the terms "sale" and phrase "offer for sale" under the CBOIA are defined as follows:

> "Sale" or "sell" includes every contract of sale of, contract to sell, or disposition of a business opportunity or interest in a business opportunity for value; (B) **"offer" or "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a business opportunity or**

8

>   **interest in a business opportunity for value**.[1] Nothing in this subdivision shall limit or diminish the full meaning of the terms "sale", "sell", "offer" or "offer to sell" as construed by the courts of this state. . . .

Conn. Gen. Stat. § 36b-61(7) (emphasis added).

The word "solicitation" is not defined within the CBOIA. Under Connecticut law, "[a]bsent an express statutory definition, the words of a statute must be assigned their commonly approved meaning unless their context indicates that a different meaning was intended." *Roto-Rooter Servs. Co. v. Dep't of Labor*, 219 Conn. 520, 526, 593 A.2d 1386, 1389 (1991) (relying upon Webster's Third New International Dictionary and Black's Law Dictionary for the definition of statutory terms) (citing *DuBaldo v. Dep't of Consumer Protection*, 209 Conn. 719, 722, 552 A.2d 813 (1989); *State v. Lubus*, 216 Conn. 402, 407, 581 A.2d 1045 (1990); *State Med. Soc'y v. Bd. of Examiners in Podiatry*, 208 Conn. 709, 721, 546 A.2d 830 (1988)); *see also* Conn. Gen. Stat. § 1-1(a) ("In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly.").

The plain meaning of the word "solicitation" is found in the dictionary; it in relevant part, means the "act or an instance of requesting or seeking to obtain something" or "[a]n attempt or effort to gain business." *Solicitation, Black's Law Dictionary* (11th

---

[1] The Court notes that "business opportunity" under the Act "means the sale or lease, or offer for sale or lease, of any product, equipment, supply or service which is sold or offered for sale to the purchaser-investor for the purpose of enabling the purchaser-investor to start a business. . . ." Conn. Gen. Stat. § 36b-61(2).

9

ed. 2019); *see generally, Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223 (1992) ("'Solicitation,' commonly understood, means 'asking' for, or 'enticing' to, something[.]") (citing *Black's Law Dictionary* (6th ed. 1990)).

Here, the Amended Complaint alleges that FCI held itself out as directing prospective franchisees to high quality franchise businesses and Jones represented that he was " uniquely qualified" to help Tyrrell "find your ideal franchise" and that "we have PRE-SCREENED literally hundreds of franchise companies to find the ones that are A+ Opportunities. We take the model and use it to sort through these to see if any of the A+ companies might match up well for you." (Dkt. 10 ¶¶ 11-12.) In June 2015, FCI and Jones served to make the introduction between Tyrrell and ILKB (*id.* ¶ 13); and Defendants made a number of representations to Plaintiffs regarding favorable reasons why Plaintiffs should purchase an ILKB franchise in order to "induce" them to purchase an ILKB franchise (*id.* ¶ 14). Based on these allegations, the Court finds that Plaintiffs have plausibly alleged that Defendants' representations, taken together, were in connection with a solicitation of an offer from Plaintiffs to ILKB for a business opportunity in the form of an ILKB franchise.

Defendants' argument that the CBOIA can only apply to the franchisor who ultimately sells the franchise ignores the broad language of the Act. The Act defines liable "persons" broadly without any limitation to the owner of the business opportunity, including a franchisor. Defendants focus on the word "seller" within the Act, however, § 36b-67(6) and § 36b-75(a) (also relied upon by Defendants (Dkt. 24 at 2)) references "persons" and not "sellers" as liable parties. Regardless, under the CBOIA, the term

"'Seller' means a person who sells or offers to sell a business opportunity or any agent or person who, directly or indirectly, acts on behalf of such person . . . ." Conn. Gen. Stat. § 36b-61(8). Given that this definition is dependent on the phrase "sells or offers to sell," which this Court has already determined encompasses the alleged solicitation by Defendants, their argument that somehow the CBOIA can only apply to ILKB as the franchisor is without merit. Indeed, while the Court agrees that there is no dispute that as alleged, the ultimate transaction involved the sale of the franchise was between ILKB and Plaintiffs, the word "solicit" does not confine itself to a franchisor and the ultimate act of the offer and acceptance. *See generally*, *Giano v. Salvatore*, No. CV106005967, 2014 WL 1283210, at *7 (Conn. Super. Ct. Feb. 26, 2014) ("The defendant's argument that he is neither an owner of the LLCs nor ever had access or was a signatory to any banking or financial accounts belonging to the LLCs is inapposite to the issue of whether the defendant's conduct is in violation of the Business Opportunity Act. The issue presently is whether the defendant's conduct including misrepresentation, omission, improper solicitation and engaging in acts, practices or a course of business which operated by way of deceit or concealment violated the Business Opportunity Act registration and disclosure requirements set forth in §§ 36b-60, et seq. Section 36b–62(a) makes clear that ownership of the business opportunity in question or control over the financial instruments of the business is not required to bring an individual under the purview of the Business Opportunity Act. Since the defendant's arguments are irrelevant to the plaintiff's claimed violation under the Business Opportunity Act, the defendant has failed to establish grounds for granting summary judgment."); *Pinter v. Dahl*, 486 U.S. 622,

643 (1988)[2] (finding with respect to the Securities Act that "[u]nder these definitions, the range of persons potentially liable under § 12(1) is not limited to persons who pass title. The inclusion of the phrase 'solicitation of an offer to buy' within the definition of 'offer' brings an individual who engages in solicitation, an activity not inherently confined to the actual owner, within the scope of § 12").

Defendants argue for the first time in their reply that the remedies section of the CBOIA makes it clear that the CBOIA is intended to apply to franchisors, not Defendants. (Dkt. 24 at 1-2.) Courts generally do not consider substantive matters that are raised for the first time in a reply memorandum. *See* LR 7.1(c)(3)(B); *see also Unison Co. v. Juhl Energy Dev., Inc.,* No. CV 13-3342 ADM/BRT, 2018 WL 4426204, at *4 (D. Minn. Sept. 17, 2018) (citations omitted). Not only does the Court reject this argument on this procedural basis, it also rejects the argument on its merits. The portion of the remedies provision of the CBOIA relied upon by Defendants provides:

> If a business opportunity seller uses any untrue or misleading statement in the sale of a business opportunity . . . then within two years of the date of the contract, upon written notice to such business opportunity seller, the

---

[2] The Supreme Court went on to explain that:

> [B]rokers and other solicitors are well positioned to control the flow of information to a potential purchaser, and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors. Thus, solicitation is the stage at which an investor is most likely to be injured, that is, by being persuaded to purchase securities without full and fair information.

*Id.* at 646-47. This is similar to the scenario alleged here, where "brokers" (Dkt. 10 ¶ 6) such as FCI are poised to control the information disseminated to prospective franchisees and it is at this solicitation stage where prospective franchisees are likely to be persuaded to purchase an ILKB franchise, especially where FCI and its agents are allegedly acting as an independent source of information.

> purchaser-investor may void the contract and shall be entitled to receive from such business opportunity seller all sums paid to such business opportunity seller. . . . Purchaser-investors shall not be entitled to unjust enrichment **by exercising** the remedies provided in this subsection.

Conn. Gen. Stat. § 36b-74(a) (emphasis added). According to Defendants, "[t]his remedy is clearly targeted to whomever the purchaser-investor has paid money." (Dkt. 24 at 2.) However, Defendants do not address the remaining remedies afforded under § 36b-74:

> (b) **Any purchaser-investor injured by a violation of sections 36b-60 to 36b-80**, inclusive, or by a business opportunity seller's breach of contract subject to said sections or any obligation arising therefrom **may bring an action for recovery of damages, including reasonable attorney's fees**.
>
> * * *
>
> (e) The rights and remedies provided by sections 36b-60 to 36b-80, inclusive, shall be in addition to any other rights or remedies provided by law or equity.

Conn. Gen. Stat. § 36b-74(b), (c) (emphases added).

The fact that the remedies under the CBOIA include voiding the franchise contract along with damages as possible remedies does not mean that the CBOIA can only apply to franchisors or that a person cannot seek one remedy without seeking the other. Indeed, the rescission subsection's use of the phrase "by exercising" supports a finding that a party seeking relief under CBOIA does not need to exercise such a remedy in order to be awarded other relief provided for under the statute and therefore, "persons" other than the owner of the business opportunity can be held liable for misrepresentations related to a solicitation. While Defendants accuse Plaintiffs of trying to re-write the CBOIA, their interpretation would rewrite the definition of "person" under the Act to only mean a franchisor or other owner of a business opportunity. Given the expansive scope as to what includes a "person" and "offer" under the plain language of the CBOIA and the fact

13

that the Act "was enacted with the purpose of preventing the misrepresentations and fraudulent practices involved in business opportunity investment sales and the financial losses and hardships to investors which result therefrom," *Cohen*, 27 A.3d at 10, the Court finds that the intent of the Connecticut Legislature was not only to punish franchisors but to ensure that brokers, such as FCI and their agents, are held accountable for the resulting harm to franchisees from their alleged fraudulent statements that franchisees acted in reliance on when deciding to purchase a franchise, even if the purchase is ultimately from a different party.

For all of the reasons set forth above, Plaintiffs have adequately alleged a plausible claim against Defendants under the CBOIA and the Motion to Dismiss this claim should be denied.

## IV.     RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that: Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Dkt. 13) be **DENIED**.

DATED: December 19, 2019                              *s/ Elizabeth Cowan Wright*
                                                     ELIZABETH COWAN WRIGHT
                                                     United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).